**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
Joshua B. Glatt (State Bar No. 354064)
Karen B. Valenzuela (State Bar No. 357231)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
lsironski@bursor.com
jglatt@bursor.com
kvalenzuela@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EDWARD YUSKIEWICZ individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SAFE CATCH, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Edward Yuskiewicz ("Plaintiff") brings this action on behalf of himself, and all others similarly situated against Defendant Safe Catch, Inc. ("Defendant" or "Safe Catch"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is an action arising from the false and misleading representations that Defendant makes regarding its Safe Catch branded canned tuna products (the "Products" or the "Tuna Cans").

2. Specifically, Defendant represented that the Tuna Cans contained 43 grams of protein per can when in fact they contain substantially less (the "False Protein Claim").




3. Indeed, independent third-party testing of **66 separate Tuna Cans** (attached as **Exhibit A**) purchased across multiple states and from multiple lots, show that on average, the Tuna Cans contain only about **30.57 grams of protein per can,** or roughly 70% of what Defendant expressly warrants. The consistent protein-underfilling in the wide sampling of geographically diverse Products tested reveals a widespread issue in Defendant's manufacturing processes. As such, the protein-underfilling affects all batches and lots of Defendant's Products, including Plaintiff's purchases.

4. Reasonable consumers like Plaintiff are not in a position to conduct protein content testing for themselves. Thus, they reasonably rely on claims made by Defendant regarding the protein content of its Products. Unfortunately for Plaintiff and similarly situated purchasers of Defendant's Products, the protein representations are false.

5. Defendant knew or should have known the falsity of its claims because it is standard industry practice for companies to test and measure the macronutrient contents of their products, especially when making front-of-label claims based on said macronutrient content. Indeed, the FDA explicitly requires it for any protein content claims on a label. *See* 21 C.F.R. 101.9(g)(2) ("The sample for nutrient analysis shall consist of a composite of 12 subsamples (consumer units), taken 1 from each of 12 different randomly chosen shipping cases, to be representative of a lot.").

6. Protein has become a focal point of American food culture, particularly "influencer" and "health-conscious" consumer culture. Generally speaking, American food products have increasingly become geared toward protein content. Protein-centered offshoots of regular products are commonplace on grocery store shelves, including products such as "protein" PopTarts, "protein chips," even "protein water," and the explosion in protein powder products. American consumers clearly care about maximizing the levels of protein they are consuming in their food, which is why Defendant so prominently advertises the protein levels for its Tuna Cans. Indeed, the protein content is a prominent and eye-catching part of its in-store advertising:




***Figure 1*: *Six-can sleeve of Defendant's Product***

7. Defendant's Products are sold across the country, including in Costco Wholesale stores, through online retailers, and at grocery stores. Its Products occupy the premium end of tuna can products and sell for roughly $6 per 5-ounce can. No matter where the Products are purchased, they bear the same uniform advertising because the False Protein Claim is printed directly on the can's label, and in Defendant's advertising copy.

8. Defendant's False Protein Claim induced reasonable consumers like Plaintiff into purchasing the Products. Had Plaintiff and all other similarly situated consumers known that—contrary to Defendant's knowing representations—the Products did not have the levels of protein that Defendant advertised, they would have paid less for the Products or not purchased them at all.

9. Plaintiff thus brings claims against Defendant for its False Protein Claim. Plaintiff asserts claims on behalf of himself and all other similarly situated purchasers of Defendant's Products for: (i) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (ii) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (iii) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, *et seq.*; and (iv) breach of express warranty.

## PARTIES

10. Plaintiff Edward Yuskiewicz is a citizen of California and resides in Del Mar, California. On multiple occasions between July 2025 and January 2026, Plaintiff Yuskiewicz purchased the Products from a Costco Wholesale store in Carlsbad, California. Prior to purchasing the Products, Plaintiff Yuskiewicz reviewed the 43 grams of protein per can claim on the label and reasonably understood it to mean that the Product contained 43 grams of protein. Plaintiff Yuskiewicz thus reasonably relied on Defendant's representations in deciding to make his purchase. Mr. Yuskiewicz would not have purchased the Product or would have done so on different terms had he known the Product's protein claims were false.

11. Plaintiff Yuskiewicz remains interested in purchasing Defendant's Products in the future. However, unless and until he can determine if the Products are accurately labeled, he will be unable to rely on the truth of Defendant's labeling. So long as the Products are labeled as containing 43 grams of protein when they actually contain significantly less, Plaintiff Yuskiewicz will be unable to make informed decisions about whether to purchase the Products in the future and will be unable to evaluate the different prices between Defendant's Products and competitors' products. Plaintiff Yuskiewicz will likewise be unable to rely on Defendant's marketing and representations going forward. Moreover, he is likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that its marketing is accurate, non-misleading, and that its Products actually contain the amount of protein that they purport to contain.

12. Defendant Safe Catch, Inc. is a Delaware corporation with headquarters in Sausalito, California.

13. Defendant markets and distributes the Products throughout the United States, including California. At all times relevant to this Complaint, Defendant has advertised, marketed, distributed, or sold the Products to consumers throughout the United States, including in this District.

14. Defendant is directly involved in the marketing, advertising, distribution, and sale of its Products and is responsible for the trade dress and packaging of the Products. Defendant developed, marketed, and sold the Products during the class period. Defendant is also directly responsible for ensuring that its Products' protein content conforms to the advertised claims. Thus Defendant's failure to ensure at its manufacturing facilities that its Products actually contain the amount of protein represented affects all batches and lots of Defendant's Products.

## JURISDICTION AND VENUE

15. This Court has subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 ("CAFA"), which amends 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions where, as here: (a) there are 100 or more members in the proposed classes; (b) some members of the proposed classes have a different citizenship from the defendant; and (c) the claims of the proposed class members exceed the sum or value of five million dollars ($5,000,000) in aggregate. *See* 28 U.S.C. §§ 1332(d)(2) and (6).

16. This Court has personal jurisdiction over Defendant because Defendant has its principal place of business in Sausalito, California.

17. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Defendant is headquartered within this District.

## FACTUAL ALLEGATIONS

### A. Protein and Protein Labeling

18. Protein is one of three macronutrients essential to human health, alongside carbohydrates and fats. It serves critical physiological functions, including:

a. **Tissue building and repair**: protein supplies the amino acids necessary to build and repair muscle, skin, organs, and other bodily tissues.

b. **Enzymatic and hormonal function**: many enzymes and hormones that regulate metabolic processes are proteins or protein derived.

c. **Immune function**: antibodies, which are essential to the body's immune response, are composed of protein.

d. **Structural support**: proteins, such as collagen and keratin, provide structural integrity to skin, bones, hair, and connective tissue.

e. **Transport and storage**: proteins like hemoglobin transport oxygen throughout the body, and others help transport and store nutrients.

19. The U.S. Department of Agriculture (USDA) and the FDA's Dietary Reference Intakes recommend that adults consume approximately 0.8 grams of protein per kilogram of body weight per day, with many consumers seeking higher-protein foods for muscle maintenance, weight management, satiety, and general health. Because protein content is a significant factor in consumer purchasing decisions—particularly for shelf-stable, affordable protein sources like canned tuna—accurate labeling of protein content is material to consumers' purchasing decisions and directly affects their health and dietary planning.

20. Protein is an increasingly central macronutrient in the American diet. American consumers have become increasingly focused on maximizing the amount of protein they consume each day. With a strong focus on fitness and nutrition, this culture reveres a high-protein diet as vitally important to health and wellness, specifically for those looking to increase muscle mass and overall physical fitness.

21. Consumers reasonably rely on the nutritional information disclosed on food packaging, including protein content, to make informed decisions consistent with their dietary needs, fitness goals, or medical requirements (*e.g.*, for individuals managing muscle-wasting conditions, kidney disease requiring protein moderation, or athletic training regimens requiring protein surplus). Misrepresentation of protein content thus causes not only economic injury but also potential harm to consumers' health and dietary planning.

22. For labeling purposes, however, manufacturers are afforded some margin between the macronutrient levels they claim their products have, and the macronutrients as actually measured for any specific sample of a product. This is known as a "safe harbor."

23. When it comes to naturally occurring protein, a product is deemed to be in compliance with the Food Drug and Cosmetic Act ("FDCA") so long as the protein in the sample is "greater than or equal to 80% of the label declaration."[1] Thus, a product that claims to contain 10 grams of protein per serving on the nutrition facts panel, but contains only 8 grams of protein per serving, would still fall within the tolerance permitted by the FDCA. If a product contains only 7 grams of protein per serving, however, that would be outside of the FDCA safe harbor. Products are permitted to *over-deliver* on the claimed protein levels per serving by any amount. But they cannot underdeliver as severely as Defendant's Products do.

**B. Defendant's Products Prominently Claim 43 Grams of Protein Per Can**

24. At issue in this action are Defendant's Safe Catch Wild Ahi Yellowfin Tuna Product. The Products come in 5-ounce cans and are sold individually or in sleeves of 3 and 6 cans.

25. Defendant advertises the Products as containing 43 grams of protein per 5-ounce can.




***Figure 2: Defendant's Tuna Can and Labeling***

[1] *See* 21 C.F.R. § 101.9(g)(4)(ii); *see also* AGT Labs, *FDA 21 CFR Part 101 Nutrition Facts Panel: A Complete Compliance Checklist*, available https://foodtesting.agtlabs.com/blog/fda-nutrition-facts-panel-checklist/.

26. As can be seen from the figure above, each can bears the "43G of PROTEIN PER CAN" claim directly on the can label itself.

27. On Defendant's website, Defendant's Product advertising relies heavily on emphasizing the protein quality and content of its Products, stating that "Protein is essential for muscle growth, cellular repair, and a healthy metabolism.[1] Every Safe Catch can is filled with only pure seafood—no added water, additives, or fillers—so you get the clean, high-quality protein your body needs."[2]

28. Defendant also includes an infographic for the protein levels in its various products. Notably, the Tuna Cans at issue are advertised as having the highest levels of protein per serving of any of Defendant's offerings, at 43 grams per 5-ounce can.




*Figure 3: Defendant's Claimed Protein Levels Per Serving by Product*

29. Unfortunately for consumers, testing proves that Defendant's advertising is false and misleading because the Tuna Cans have *significantly* less protein than Defendant claims and what any safe harbor allows.

[2] *Nutritional Benefits*, www.safecatch.com (Accessed August 28, 2026).

**C. Defendant's Products Are Significantly Underfilled**

30. Attached as **Exhibit A** to this Complaint is third-party testing of over 60 cans of Defendant's Products from eight different lots and purchased from three separate Costco Wholesale locations in California and Missouri.

31. At Costco, Defendant's Products come in sleeves of 6 cans, pictured above at Figure 1. One and two six-can sleeves of the Products were purchased from multiple Costco locations in California and Missouri during November and December 2025 and sent in for third-party testing at an ISO 17025-accredited lab. A total of 66 cans were tested for their protein content.

32. Testing was conducted by Eurofins, an internationally recognized authority in food and chemical analysis. Eurofins is ISO 17025 certified and conducts crude protein analysis using FDA recognized methodologies. Eurofins deploys either the Kjeldahl method for determining protein content of food or the Dumas method, including AOAC methods.[3] These methods are sufficient per FDA requirements. *See* 21 C.F.R. 101.9(g) ("The sample for nutrient analysis shall consist of a composite of 12 subsamples (consumer units), taken 1 from each of 12 different randomly chosen shipping cases, to be representative of a lot. Unless a particular method of analysis is specified in paragraph (c) of this section, composites shall be analyzed by appropriate methods as given in the 'Official Methods of Analysis of the AOAC International,' or, if no AOAC method is available or appropriate, by other reliable and appropriate analytical procedures.").

33. Defendant claims its Products have 43 grams of protein per can. Pursuant to the FDA's safe harbor guidelines, the actual amount of protein in each can may be as low as 80% of the 43 grams claimed or not less than 34 grams. Compliance with FDA requirements requires averaging "[a] collection of primary containers or units of the same size, type, and style produced under conditions as nearly uniform as possible, designated by a common container code or

[3] *See*, *e.g.*, EUROFINS (May 28, 2026), *Sustainable Methods in Modern Nutritional Analysis* https://www.eurofins.com/en-de/food-testing/news/sustainable-nutritional-analysis/

marking, or in the absence of any common container code or marking, a day's production, constitutes a 'lot.'"[4]

34. "[T]he nutrient content of the composite must be at least equal to 80 percent of the value for that nutrient declared on the label."[5] The composite the large swatch of cans tested shows that Defendant's Products are significantly protein-underfilled. Of the 66 cans that were tested, *only three* contained 34 or more grams of protein. Across all samples, the average amount of protein measured was just 30.57 grams, with one can containing only 24 grams of protein.

35. Extrapolating the data gathered through this testing of 66 samples, only 4.5% of Defendant's Tuna Cans meet or exceed even the 80% safe harbor threshold. And that is just the bare minimum to meet the FDA's food labeling guidelines. Of the 66 samples tested, not a single one exceeded 43 grams of protein per can.

36. It is apparent on its face that Defendant does not ensure consumers are getting what they pay for. Defendant claims "43 grams of protein" but misses severely. All the while, Defendant's Products are almost guaranteed to not have enough protein to even meet the lower bound of the tolerance window. Defendant's advertising is facially false and misleading because consumers do not appear to ever receive the protein levels that Defendant has advertised and which they paid for.

37. Throughout the class period, Defendant made repeated express representations on the Products' packaging and in its marketing (including in-store and on Amazon and other websites carrying the Products) that the Products contained 43 grams of protein per can. The third-party testing proves otherwise. Defendant's advertising is thus false and highly misleading to consumers like Plaintiff and the members of the Classes they seek to represent.

[4] 21 C.F.R. § 101.9(g)(1).

[5] 21 C.F.R. § 101.9(g)(4)(ii).

**D. Defendant's Misrepresentations Economically Injured Plaintiff And Class Members**

38. By falsely claiming that its Tuna Cans have 43 grams of protein per can, Defendant was able to overcharge Plaintiff and the class members in the amount of a premium associated with those claims.

39. Defendant's False Protein Claims appeared on its packaging and webpages where its Products were sold. Accordingly, those claims were seen by all purchasers of the Products.

40. Defendant's False Protein Claims misled reasonable consumers. As a Costco vendor, Defendant's Products are some of the most widely sold canned tuna products in the nation. Consumers reasonably believe Defendant's False Protein Claims; consumers do not and cannot typically test the accuracy of a protein claim before purchasing canned tuna, nor would it make economic sense for them to do so. And California law is clear, consumers are empowered to "take the front label [of a product] at face value[.]" *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 781 (9th Cir. 2024) (relying on *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1174-75 (2018)).

41. If Defendant had not claimed that its Products contain 43 grams of protein per can, then the market price of those Tuna Cans would have been lower, *i.e.*, the market price would have been less than it was in the actual world, and closer to the price of canned tuna with lower protein levels.

42. For example, while Defendant's Product is sold for $6.99 at Safeway. StarKist Yellowfin Tuna sells for $2.79 (4.5oz).[6] Genova Premium Yellowfin Tuna (5oz) sells for $2.99;[7] and Chicken of the Sea Solid Yellowfin Tuna sells for $2.00 (4oz).[8]

43. And each of these competing brands only advertise up to 32 grams of protein per can.

---

[6] SAFEWAY.COM, *StarKist Tuna Yellowfin Solid Light in Extra Virgin Olive Oil – 4.5oz*, available https://tinyurl.com/cjynd3jw (last accessed Sept. 8, 2026)

[7] TARGET.COM, *Genova Solid Yellow Fin Tuna in Olive Oil – 5oz,* available *https://tinyurl.com/3fnxzt95* (last accessed Sept. 8, 2026)

[8] WALMART.COM, *Chicken of the Sea Wild Caught Solid Yellowfin Pure Tuna, No Drain 4oz*, https://tinyurl.com/4n9e3taw (last accessed Sept. 8, 2026)

44. Accordingly, Plaintiff and the proposed Classes paid for Defendant's Products at artificially inflated prices due to the False Protein Claim. In other words, Defendant's misrepresentations allowed it to overcharge Plaintiff and the Classes, who were damaged in the amount of that overcharge.

## FED. R. CIV. P. 9(b) ALLEGATIONS

45. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Though Defendant is best situated to know the composition of its Products, to the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

46. **WHO:** Defendant Safe Catch, Inc.

47. **WHAT:** Defendant's conduct was, and continues to be, deceptive because it deceived consumers into believing that the Products contained 43 grams of protein per can when testing showed that they were significantly protein-underfilled. Even though Defendant was in control of, aware of, or should have been aware of, the amount of protein in its Products, Defendant failed to accurately state the amount of protein in the Products. Defendant knew, or should have known, this information is material to reasonable consumers as it emphasized its Products' protein content. Yet, Defendant misrepresented on the labeling and advertising of its Products that they contain more protein than they actually do. Defendant failed to ensure the Products in fact contain the amount of protein represented on the packaging. Defendant who has an obligation to test and ensure the accuracy of its Products' protein content, knew or should have known that the Products contained less protein than advertised.

48. **WHEN:** Defendant engaged in this deceptive conduct continuously throughout the applicable statutory period, including at the point of sale, by printing the false and misleading protein content directly on its Products' packaging.

49. **WHERE:** Defendant's misrepresentations were made through its Products' label and webpages and were thus viewed by every purchaser, including Plaintiff, at the point of sale in

every transaction. The Products are sold nationwide in brick-and-mortar stores and online. Defendant's underfill of the protein content occurred in Defendant's manufacturing facilities.

50. **HOW IT IS FALSE:** Defendant misrepresented on the Products' label that they contain 43 grams of protein per can when they do not. And as discussed in detail throughout the Complaint, Plaintiff and consumers (including members of the putative classes) read and relied on Defendant's misrepresentations before purchasing the Products.

51. **WHY:** Defendant misrepresented and underfilled the amount of protein in the Products. The protein representation was material in that it induced consumers like Plaintiff to purchase the Products for their purported nutritional benefit while charging consumers a price premium. Further, due to the representations and the Products being protein-underfilled, Plaintiff and members of the putative classes would not have purchased the Products or would have paid less for them had they known the truth about the protein content. As such, Defendant unlawfully profited by selling the Products to thousands of consumers throughout the nation, including Plaintiff and the members of the putative classes.

52. **INJURY:** Plaintiff and Class Members were injured by Defendant's conduct in that they would not have purchased Defendant's Products, or would not have purchased them on the same terms, had they known the Products contain less protein than Defendant expressly represented on the packaging.

## CLASS ALLEGATIONS

53. ***Class Definition***. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and 23(c)(4) on behalf of himself and all other similarly situated consumers, and seeks to represent a nationwide class (the "**Nationwide Class**") defined as:

> All natural persons in the United States who purchased one or more Safe Catch Wild Ahi Yellowfin Tuna Cans for personal or household use during the applicable statutory period.

54. Plaintiff also seeks to represent a California subclass defined as follows (the "**California Subclass**"):

> All natural persons in California who purchased one or more Safe Catch Wild Ahi Yellowfin Ahi Cans for personal or household use during the applicable statutory period.

55. The Nationwide Class and California Subclass are collectively referred to as the "Classes." Excluded from the Classes are governmental entities; Defendant; and Defendant's affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators. Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

56. Plaintiff reserves the right to modify or expand the definition of the Classes to seek recovery on behalf of additional persons as facts are learned in further investigation and discovery.

57. ***Numerosity.*** Members of the Classes are so numerous that their individual joinder herein is impracticable. The precise number of Class members and their identities are unknown to Plaintiff at this time but will be determined through discovery of Defendant's records. Class members may be notified of the pendency of this action by mail, email, publication, and/or other media, including social media.

58. ***Commonality and Predominance***. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. These common legal and factual questions include, but are not limited to:

a. Whether the Products do in fact contain the 43 grams of protein that Defendant warrants;

b. Whether Defendant's express representations about the protein content of the Products included false and/or misleading statements and/or omissions;

c. Whether Defendant knowingly made the False Protein Claims;

d. Whether Defendant's representations were material;

e. Whether a reasonable consumer would have been misled by Defendant's False Protein Claims; and

f. Whether Defendant's False Protein Claims allowed it to charge more for the Products than it otherwise could have.

59. ***Typicality.*** Plaintiff's claims are typical of the claims of the proposed Classes because Plaintiff, like all members of the Classes, was induced by Defendant's false and

misleading warranties to purchase Defendant's Products without knowing that Defendant's claims about the Products' protein content were false and misleading. The Plaintiff, like all members of the Classes, has been damaged by Defendant's misconduct in the very same way as the members of the Classes. Further, the factual bases of Defendant's misconduct are common to all members of the Classes and represent a common thread of misconduct resulting in injury to all members of the Classes.

60. ***Adequacy***. Plaintiff is an adequate representative of the Classes he seeks to represent because his interests do not conflict with the interests of the members of the Classes; has retained counsel competent and experienced in prosecuting class actions; and intends to prosecute this action vigorously. The interests of the members of the Classes will be fairly and adequately protected by Plaintiff and his counsel.

61. ***Superiority***. A class action is superior to other available means for the fair and efficient adjudication of the claims of the members of the Classes. Each individual member of the Classes may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also represents a potential for inconsistent or contradictory judgments. By contrast, the class-action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
**Violations of California's Unfair Competition Law ("UCL")**
**Business & Professions Code §§ 17200, *et seq*.**
**(On Behalf of Plaintiff, the Nationwide Class, and California Subclass)**

62. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

63. Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class and California Subclass against Defendant.

64. This claim is brought under the laws of California because Defendant is headquartered in California.

65. Defendant violated California's UCL by engaging in unlawful, fraudulent, and unfair conduct (*i.e.*, violating each of the three prongs of the UCL).

***The Unlawful Prong***

66. Defendant engaged in unlawful conduct by violating the CLRA and FAL as described below.

***The Fraudulent Prong***

67. As alleged in detail above, Defendant misrepresented material facts about its Products, including by misrepresenting to consumers that the Products contained 43 grams of protein per can, despite knowing that they did not.

68. Defendant, as manufacturer and marketer of the Products, was in a position to know (and did know) the true protein content of its Products but affirmatively warranted that the Products had a greater amount of protein than they actually did.

69. As a result of these false and misleading practices, Defendant induced Plaintiff and the members of the Nationwide and California Subclass to purchase the Products at their market price, however, Plaintiff and the class members would not have purchased, or would have paid substantially less for the Products, had Defendant been truthful about the actual protein content of its Tuna Cans.

***The Unfair Prong***

70. Defendant's conduct was unfair because it made false and misleading claims about its Products' protein content. This is unfair because it led Plaintiff and the members of the Nationwide Class and California Subclass to purchase the Products at a certain price, when they would not have purchased the Products or paid less for it had they known the truth. Defendant's misleading practice was also unfair because it gave Defendant an unfair advantage over competitors to the extent that Defendant's sales are in part influenced by its False Protein Claims.

71. Plaintiff and the Nationwide Class and California Subclass members could not have reasonably avoided the injury. Only Defendant was aware that its Tuna Cans did not have 43 grams of protein per can.

***

72. For all prongs, Defendant's false and misleading conduct was intended to induce reliance, and Plaintiff and members of the Nationwide and California Subclass saw, read, and reasonably relied on Defendant's false and misleading warranties about the protein content of its Tuna Cans. Defendant's deceptive, misleading, and unfair conduct was a substantial factor in Plaintiff's, the Nationwide Class', and the California Subclass's purchasing decisions.

73. Defendant's misrepresentations were a substantial factor and proximately caused the damages and loss to Plaintiff and the members of the Nationwide Class and California Subclass.

74. There was no benefit to consumers or competition from falsely claiming that the Products were of a quality that they were not.

75. Plaintiff and the members of the Nationwide Class and California Subclass have suffered harm as a result of Defendant's violations of the UCL because they have incurred charges and/or paid monies they otherwise would not have incurred or paid had Defendant advertised its Products truthfully.

76. Plaintiff lacks an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiff and Members of the Nationwide Class and California Subclass are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.

77. Plaintiff and Members of the Nationwide and California Subclass seek restitution, reasonable costs and attorneys' fees, and to enjoin the unlawful acts and practices described herein.

**COUNT II**
**Violations of California's False Advertising Law ("FAL")**
**Business & Professions Code §§ 17500, *et seq.***
**(On Behalf of Plaintiff, The Nationwide Class, and California Subclass)**

78. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

79. Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class and California Subclass against Defendant.

80. This claim is brought under the laws of California.

81. California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.,* makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or service, . . . or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

82. During the applicable statutory period, Defendant committed acts of false advertising, as defined by the FAL, by making false and misleading representations about its Products' total protein content to attract more purchasers than its Products would otherwise have received. Likewise, Defendant's false advertising induced consumers to purchase the Products or pay more for the Products than consumers otherwise would have had they known the truth about the Product's actual protein content.

83. Defendant knew or should have known, through the exercise of reasonable care, that its claims about its Products' total protein content were untrue and misleading.

84. Defendant's actions in violation of the FAL were false and misleading such that the general public is and was likely to be deceived.

85. As a direct and proximate result of these acts, consumers have been and are being harmed, including Plaintiff and the members of the Nationwide Class and California Subclass. Plaintiff and the members of the Nationwide Class and California Subclass have suffered injury and actual out-of-pocket losses as a result of Defendant's FAL violation because: (a) Plaintiff, and

class members would not have purchased Defendant's Products or would have paid substantially less for the Products had Defendant not advertised them with the False Protein Claims; (b) Plaintiff and the members of the Nationwide Class and California Subclass paid an increased price for the Products based on this advertising; and (c) the Products did not confer the value they promised to confer because they did not actually contain 43 grams of protein per can.

86. Plaintiff lacks an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to the Members of the Nationwide and California Subclass are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.

87. Equitable relief is also appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from their purchase of the Products is determined to be an amount less than the premium price of the Products. Without compensation for the full premium price of the Products, Plaintiff and the Members of the Nationwide Class and California Subclass would be left without the parity in purchasing power to which they are entitled.

88. Plaintiff, the Nationwide Class, and the California Subclass are therefore entitled to: (a) full restitution of all monies paid to Defendant as a result of their deceptive practices; (b) interest at the highest rate allowed by law; and (c) the payment of Plaintiff's attorneys' fees and costs.

**COUNT III**

**Violations of California's Consumers Legal Remedies Act ("CLRA")**

**Cal. Civ. Code §§ 1750, *et seq.***

**(On Behalf of Plaintiff, the Nationwide Class, and the California Subclass)**

89. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

90. Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class and the California Subclass against Defendant.

91. This claim is brought under the laws of California.

92. Defendant is a "person," as defined by Cal. Civ. Code § 1761(c).

93. Plaintiff and members of the Nationwide Class and California Subclass are "consumers," as defined by Cal. Civ. Code § 1761(d).

94. The Products purchased by Plaintiff, the Nationwide Class, and the California Subclass are "goods" as defined by Cal. Civ. Code § 1761(a).

95. The purchases by Plaintiff, the Nationwide Class, and the California Subclass constitute "transactions," as defined by Cal. Civ. Code § 1761(e).

96. As alleged more fully above, Defendant has violated the CLRA by furnishing false and misleading statements about the protein content of its Products to attract and induce more consumers to purchase its Products than would have otherwise purchased the Products absent the False Protein Claim.

97. As a result of engaging in such conduct, Defendant has violated California Civ. Code §§ 1770(a)(5), (a)(7) and (a)(9).

98. Defendant's conduct was likely to deceive, and did deceive, Plaintiff, the members of the Nationwide Class and California Subclass, all of whom are reasonable consumers. Defendant knew or should have known through the exercise of reasonable care, that its claim about its Products' total protein content was false and misleading.

99. Defendant's False Protein Claims were intended to induce reliance, and Plaintiff and the members of the Nationwide Class and California Subclass, read, and reasonably relied on the false and misleading affirmative representations when deciding to purchase Defendant's Products. Defendant's deceptive conduct was a substantial factor in Plaintiff's purchase decisions and the purchase decisions of the proposed Nationwide Class and California Subclass.

100. Plaintiff and members of the Nationwide Class and California Subclass have suffered harm as a result of these violations of the CLRA because they incurred charges and/or paid monies for the Products that they otherwise would not have incurred or paid.

101. In compliance with the provisions of California Civil Code § 1782, Counsel for Plaintiff sent written notice to Defendant on or about July 24, 2026, informing Defendant of their intention to seek damages under California Civil Code § 1750. The letter was sent via certified

mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. The letter expressly stated that it was sent on behalf of Plaintiff and "all other persons similarly situated." Defendant did not provide such relief. Accordingly, Plaintiff seeks money damages under the CLRA to the fullest extent permitted.

102. Plaintiff and Members of the Nationwide Class and California Subclass seek actual and punitive damages, restitution, reasonable costs and attorneys' fees, and to enjoin the unlawful acts and practices described herein pursuant to Cal. Civ. Code § 1780.

**COUNT IV**
**Breach of Express Warranty**
**(On Behalf of Plaintiff and the Classes)**

103. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

104. Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class or, in the alternative, the California Subclass under the laws of the State of California.

105. As alleged in detail above, Defendant expressly warranted that its Products contained 43 grams of protein per can. However, testing showed that the Products universally failed to meet these claims, containing on average only 30.57 grams of protein per can. This discrepancy is well outside of the 20% safe harbor permitted by regulation. Even if the Products had more than 80% of the protein that Defendant claimed, not a single can tested had the 43 grams of protein that Defendant claimed. Thus, Defendant made affirmatively false and misleading claims regarding the protein contents of its Products.

106. Defendant was in a position to know the true quality and capability of its Products because it routinely conducts protein content testing, yet it expressly warranted that its Products contained more protein than they did.

107. Substantial benefits have been conferred on Defendant by Plaintiff and the Classes through the purchase of the Products. Defendant knowingly and willingly accepted and enjoyed these benefits.

108. Plaintiff and members of the Classes suffered economic injury as a direct and proximate result of Defendant's breach of warranties because: (a) they would not have purchased the Products on the same terms if they had known that the Products had been falsely labeled as alleged herein; (b) they paid a price premium for the Products based on Defendant's express warranties; and (c) the Products did not have the characteristics, uses, or benefits as promised by Defendant on the packaging. As a result, Plaintiff and members of the Classes have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted and the Products as sold.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all members of the proposed Classes the following relief against Defendant:

(a) An order certifying the Nationwide Class and California Subclass, and naming Plaintiff's attorneys as Class Counsel to represent the members of the Classes;

(b) An order declaring that Defendant's conduct violates the statutes and common law referenced herein;

(c) Compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(d) Prejudgment interest on all amounts awarded;

(e) Restitution and all other forms of equitable monetary relief;

(f) An order requiring Defendant to undertake a corrective advertising campaign;

(g) An order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit; and

(h) Granting such other and further relief as may be just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: September 9, 2026

**BURSOR & FISHER, P.A.**

By: */s/ L. Timothy Fisher*
L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
Joshua B. Glatt (State Bar No. 354064)
Karen B. Valenzuela (State Bar No. 357231)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
lsironski@bursor.com
jglatt@bursor.com
kvalenzuela@bursor.com

*Attorneys for Plaintiff*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher, declare as follows:

1. I am counsel for Plaintiff and a partner at Bursor & Fisher, P.A. I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

2. The complaint filed in this action is filed in the proper place for trial because Defendant is at home in this District.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, executed on September 9, 2026, at Walnut Creek, California.

*/s/ L. Timothy Fisher*
L. Timothy Fisher

**EXHIBIT A**


ONLY BRAND TO TEST EVERY TUNA
Mercury average is 25X below FDA Limit
SAFE
SAFE
NON GMO Project VERIFIED
nongmoproject.org
American Pregnancy Association
OFFICIAL TUNA
43G OF PROTEIN PER CAN
Learn more at safecatch.com | From an MSC certified sustainable fishery. www.msc.org


EVERY TUNA MERCURY TESTED
Safe Catch
43G
PROTEIN
Wild AHI YELLOWFIN TUNA
SUSTAINABLY
Safe Catch
Safe Catch
EVERY TUNA MERCURY TESTED
Safe Catch
43G
Wild AHI YELLOWFIN TUNA
SUSTAINABLY

**Safe Catch Ahi Yellowfin Tuna**

| Costco Store | Location | Lab | Lot code | Expiry | Sample # | COA | Report Date | No drain/Drained | Protein/100g | Protein/142g (5oz) | Avg Protein/142g |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | May 2028 | 1 | 5141366-0 | 11/11/2025 | No Drain | 23.4 | 33.23 | |
| | | | | May 2028 | 2 | 5141367-0 | 11/11/2025 | No Drain | 21.8 | 30.96 | |
| 13463 Washington Blvd., Marina Del Rey, CA 90292 | Marina Del Rey, CA | Eurofins | B5FR2G | May 2028 | 3 | 5141368-0 | 11/11/2025 | No Drain | 20.9 | 29.68 | |
| | | | | May 2028 | 4 | 5141369-0 | 11/11/2025 | No Drain | 22.2 | 31.52 | |
| | | | | May 2028 | 5 | 5141370-0 | 11/11/2025 | No Drain | 20.8 | 29.54 | |
| | | | | May 2028 | 6 | 5141371-0 | 11/11/2025 | No Drain | 21.9 | 31.10 | 31.00 |

| Costco Store | Location | Lab | Lot code | Expiry | Sample # | COA | Report Date | No drain/Drained | Protein/100g | Protein/142g (5oz) | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Jun 2028 | 1 | 5163222-0 | 12/2/2025 | No Drain | 21.8 | 30.96 | |
| | | | | Jun 2028 | 2 | 5163223-0 | 12/2/2025 | No Drain | 22.6 | 32.09 | |
| | | | | Jun 2028 | 3 | 5163224-0 | 12/2/2025 | No Drain | 23.8 | 33.80 | |
| | | | | Jun 2028 | 4 | 5163225-0 | 12/2/2025 | No Drain | 25.1 | 35.64 | |
| | | | | Jun 2028 | 5 | 5163226-0 | 12/2/2025 | No Drain | 23.2 | 32.94 | |
| 951 Palomar Airport Rd, Carlsbad, CA 92011 | Carlsbad, CA | Eurofins | B6HVAG | Jun 2028 | 6 | 5163227-0 | 12/2/2025 | No Drain | 21.2 | 30.10 | |
| | | | | Jun 2028 | 7 | 5163228-0 | 12/2/2025 | No Drain | 23.8 | 33.80 | |
| | | | | Jun 2028 | 8 | 5163229-0 | 12/2/2025 | No Drain | 21.7 | 30.81 | |
| | | | | Jun 2028 | 9 | 5163230-0 | 12/2/2025 | No Drain | 22.6 | 32.09 | |
| | | | | Jun 2028 | 10 | 5163231-0 | 12/2/2025 | No Drain | 23.2 | 32.94 | |
| | | | | Jun 2028 | 11 | 5163232-0 | 12/2/2025 | No Drain | 20.7 | 29.39 | |
| | | | | Jun 2028 | 12 | 5163233-0 | 12/2/2025 | No Drain | 23.2 | 32.94 | 32.29 |

| Costco Store | Location | Lab | Lot code | Expiry | Sample # | COA | Report Date | No drain/Drained | Protein/100g | Protein/142g (5oz) | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Jun 2028 | 1 | 5164631-0 | 12/3/2025 | No Drain | 22.1 | 31.38 | |
| | | | | Jun 2028 | 2 | 5164632-0 | 12/3/2025 | No Drain | 21.8 | 30.96 | |
| | | | | Jun 2028 | 3 | 5164633-0 | 12/3/2025 | No Drain | 21.2 | 30.10 | |
| | | | | Jun 2028 | 4 | 5164634-0 | 12/3/2025 | No Drain | 21.0 | 29.82 | |
| | | | | Jun 2028 | 5 | 5164635-0 | 12/3/2025 | No Drain | 22.4 | 31.81 | |
| 301 Highlands Blvd Dr., #106D, Manchester, MO 63011 | Manchester, MO | Eurofins | B6RR1G | Jun 2028 | 6 | 5164636-0 | 12/3/2025 | No Drain | 18.7 | 26.55 | |
| | | | | Jun 2028 | 7 | 5164637-0 | 12/3/2025 | No Drain | 21.4 | 30.39 | |
| | | | | Jun 2028 | 8 | 5164638-0 | 12/3/2025 | No Drain | 22.4 | 31.81 | |
| | | | | Jun 2028 | 9 | 5164639-0 | 12/3/2025 | No Drain | 20.2 | 28.68 | |
| | | | | Jun 2028 | 10 | 5164640-0 | 12/3/2025 | No Drain | 20.9 | 29.68 | |
| | | | | Jun 2028 | 11 | 5164641-0 | 12/3/2025 | No Drain | 21.4 | 30.39 | |
| | | | | Jun 2028 | 12 | 5164642-0 | 12/3/2025 | No Drain | 20.8 | 29.54 | 30.09 |

| Costco Store | Location | Lab | Lot code | Expiry | Sample # | COA | Report Date | No drain/Drained | Protein/100g | Protein/142g (5oz) | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Aug 2028 | 1 | 5151114-0 | 11/19/2025 | No Drain | 23.4 | 33.23 | |
| | | | | Aug 2028 | 2 | 5151115-0 | 11/19/2025 | No Drain | 19.8 | 28.12 | |
| 13463 Washington Blvd., Marina Del Rey, CA 90292 | Marina Del Rey, CA | Eurofins | B8CVAG | Aug 2028 | 3 | 5151116-0 | 11/19/2025 | No Drain | 21.0 | 29.82 | |
| | | | | Aug 2028 | 4 | 5151117-0 | 11/19/2025 | No Drain | 25.6 | 36.35 | |
| | | | | Aug 2028 | 5 | 5151118-0 | 11/19/2025 | No Drain | 19.0 | 26.98 | |
| | | | | Aug 2028 | 6 | 5151119-0 | 11/19/2025 | No Drain | 20.3 | 28.83 | 30.55 |

| Costco Store | Location | Lab | Lot code | Expiry | Sample # | COA | Report Date | No drain/Drained | Protein/100g | Protein/142g (5oz) | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 13463 Washington Blvd., Marina Del Rey, CA 90292 | Marina Del Rey, CA | Eurofins | B8CZAG | Aug 2028 | 1 | 5159575-0 | 11/26/2025 | No Drain | 22.2 | 31.52 | |
| | | | | Aug 2028 | 2 | 5159576-0 | 11/26/2025 | No Drain | 27.3 | 38.77 | |
| | | | | Aug 2028 | 3 | 5159577-0 | 11/26/2025 | No Drain | 21.7 | 30.81 | |
| | | | | Aug 2028 | 4 | 5159578-0 | 11/26/2025 | No Drain | 21.9 | 31.10 | |
| | | | | Aug 2028 | 5 | 5159579-0 | 11/26/2025 | No Drain | 21.1 | 29.96 | |
| | | | | Aug 2028 | 6 | 5159580-0 | 11/26/2025 | No Drain | 22.1 | 31.38 | 32.26 |

| Costco Store | Location | Lab | Lot code | Expiry | Sample # | COA | Report Date | No drain/Drained | Protein/100g | Protein/142g (5oz) | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 951 Palomar Airport Rd, Carlsbad, CA 92011 | Carlsbad, CA | Eurofins | B8DV1G | Aug 2028 | 1 | 5163216-0 | 12/2/2025 | No Drain | 16.9 | 24.00 | |
| | | | | Aug 2028 | 2 | 5163217-0 | 12/2/2025 | No Drain | 20.7 | 29.39 | |
| | | | | Aug 2028 | 3 | 5163218-0 | 12/2/2025 | No Drain | 19.7 | 27.97 | |
| | | | | Aug 2028 | 4 | 5163219-0 | 12/2/2025 | No Drain | 18.3 | 25.99 | |
| | | | | Aug 2028 | 5 | 5163220-0 | 12/2/2025 | No Drain | 21.4 | 30.39 | |
| | | | | Aug 2028 | 6 | 5163221-0 | 12/2/2025 | No Drain | 21.6 | 30.67 | 28.07 |

| Costco Store | Location | Lab | Lot code | Expiry | Sample # | COA | Report Date | No drain/Drained | Protein/100g | Protein/142g (5oz) | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 951 Palomar Airport Rd, Carlsbad, CA 92011 | Carlsbad, CA | Eurofins | B8DVCG | Aug 2028 | 1 | 5163210-0 | 12/2/2025 | No Drain | 22.8 | 32.38 | |
| | | | | Aug 2028 | 2 | 5163211-0 | 12/2/2025 | No Drain | 21.7 | 30.81 | |
| | | | | Aug 2028 | 3 | 5163212-0 | 12/2/2025 | No Drain | 20.7 | 29.39 | |
| | | | | Aug 2028 | 4 | 5163213-0 | 12/2/2025 | No Drain | 20.8 | 29.54 | |
| | | | | Aug 2028 | 5 | 5163214-0 | 12/2/2025 | No Drain | 21.2 | 30.10 | |
| | | | | Aug 2028 | 6 | 5163215-0 | 12/2/2025 | No Drain | 20.7 | 29.39 | 30.27 |

| Costco Store | Location | Lab | Lot code | Expiry | Sample # | COA | Report Date | No drain/Drained | Protein/100g | Protein/142g (5oz) | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 301 Highlands Blvd Dr., #106D, Manchester, MO 63011 | Manchester, MO | Eurofins | B83VAG | Aug 2028 | 1 | 5164643-0 | 12/3/2025 | No Drain | 22.1 | 31.38 | |
| | | | | Aug 2028 | 2 | 5164644-0 | 12/3/2025 | No Drain | 21.6 | 30.67 | |
| | | | | Aug 2028 | 3 | 5164645-0 | 12/3/2025 | No Drain | 21.2 | 30.10 | |
| | | | | Aug 2028 | 4 | 5164646-0 | 12/3/2025 | No Drain | 18.5 | 26.27 | |
| | | | | Aug 2028 | 5 | 5164647-0 | 12/3/2025 | No Drain | 21.9 | 31.10 | |
| | | | | Aug 2028 | 6 | 5164648-0 | 12/3/2025 | No Drain | 20.4 | 28.97 | |
| | | | | Aug 2028 | 7 | 5164649-0 | 12/3/2025 | No Drain | 20.8 | 29.54 | |
| | | | | Aug 2028 | 8 | 5164650-0 | 12/3/2025 | No Drain | 21.5 | 30.53 | |
| | | | | Aug 2028 | 9 | 5164651-0 | 12/3/2025 | No Drain | 20.6 | 29.25 | |
| | | | | Aug 2028 | 10 | 5164652-0 | 12/3/2025 | No Drain | 22.8 | 32.38 | |
| | | | | Aug 2028 | 11 | 5164653-0 | 12/3/2025 | No Drain | 21.3 | 30.25 | |
| | | | | Aug 2028 | 12 | 5164654-0 | 12/3/2025 | No Drain | 21.1 | 29.96 | 30.03 |

**Avg** 30.64